# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**NANDALALL RAMESHWAR, ARTHUR HOOKS HUMPHREY, CONSUELA RENAE HOOKS and DOROTHY LISA HUMPHREY,**

        **Plaintiffs,**

**v.**                                        **Case No:   6:18-cv-1597-Orl-37LRH**

**MINNESOTA LIFE INSURANCE COMPANY,**

        **Defendant.**

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

This cause came on for consideration without oral argument on the following motion filed herein:

> **MOTION:**    **DEFENDANT'S UNOPPOSED MOTION FOR COURT TO RETAIN JURISDICTION TO ENFORCE SETTLEMENT AND TO ADDRESS THE PENDING CHARGING LIEN AND RETAINING LIEN (Doc. No. 66)**
>
> **FILED:**      **February 25, 2020**
>
> ___
>
> **THEREON** it is **RECOMMENDED** that the motion be **GRANTED in part and DENIED in part**.

**I.   BACKGROUND.**

On August 1, 2018, George E. Ollinger, Esq. ("Attorney Ollinger"), on behalf of the Estate of Claudia Rameshwar, instituted this action in state court against Defendant Minnesota Life

Insurance Company ("Defendant").  Doc. No. 2.  On September 25, 2018, Defendant removed the case to this Court.  Doc. No. 1.

On October 17, 2018, on Defendant's motion, the Court dismissed the complaint, finding that "[a]ny amended filing must be brought by a plaintiff with standing who would be the real party in interest," and that "Plaintiff's bad faith claim [was] not yet ripe."  Doc. No. 14, at 2.  Shortly thereafter, Attorney Ollinger filed two versions of an amended complaint against Defendant, this time on behalf of Nandalall Rameshwar, Arthur Hooks Humphrey, Consuela Renae Hooks, and Dorothy Lisa Humphrey (collectively "Plaintiffs").  Doc. Nos. 15, 17.  The Court *sua sponte* dismissed both of those complaints for failure to properly allege that the Court had jurisdiction over Plaintiffs' claims.  Doc. Nos. 16, 18.

On October 23, 2018, Attorney Ollinger filed a third amended complaint on Plaintiffs' behalf and against Defendant.  Doc. No. 19.  On November 6, 2018, Defendant filed an answer and affirmative defenses.  Doc. No. 25.  The Case Management and Scheduling Order issued December 5, 2018.  Doc. No. 36.

As early as December 4, 2018, it began to appear that there were issues involving Attorney Ollinger and his representation of Plaintiffs.  *See* Doc. No. 33.  Attorney Ollinger filed several motions to extend the deadline to amend pleadings, purportedly to substitute the named Plaintiffs for a personal representative of the Estate, indicating that "[a] personal representative is necessary to be the plaintiff in this case because of a potential conflict of interest between the named plaintiffs." Doc. Nos. 33, 35, 38.  In addition, Attorney Ollinger filed a document titled "Notice of Conflict" regarding Plaintiffs.  Doc. No. 32.  On November 20, 2018, Attorney Ollinger also filed a Notice of Charging Lien and Notice of Retaining Lien on the docket.  Doc. Nos. 30, 31.

Defendant also filed several documents on the record relating to Plaintiffs' representation by Attorney Ollinger. For example, Defendant filed: (1) a November 27, 2018 letter from Claudia Rameshwar to Defendant indicating that Attorney Ollinger no longer represented Plaintiffs (Doc. No. 39-1); (2) a complaint filed by Attorney Ollinger against Plaintiffs in state court on November 22, 2018 (Doc. No. 39-2); (3) an affidavit from defense counsel's law firm stating that Plaintiffs contacted Defendant in December 2018 and stated that Attorney Ollinger no longer represented them (Doc. No. 39-3); and (4) correspondence from Plaintiffs to Defendant regarding Attorney Ollinger's representation of Plaintiffs (Doc. No. 42-1).

The case was reassigned to the undersigned as the assigned Magistrate Judge on March 1, 2019. Doc. No. 41. Upon review of the docket, the undersigned found it unclear based on the above filings whether Attorney Ollinger still represented the named Plaintiffs or whether Plaintiffs intended to proceed *pro se* in this case. Accordingly, the undersigned ordered Attorney Ollinger to file a status report addressing these issues. Doc. No. 44. Attorney Ollinger filed a timely response, and based on a review of that response, the undersigned set the matter for an in-person status conference to be held on April 15, 2019. Doc. Nos. 45, 46.

On April 16, 2019, following the status conference and the representations made therein, Attorney Ollinger was terminated as counsel of record for Plaintiffs. Doc. No. 51. Specifically, Attorney Ollinger stated that he no longer represented the named Plaintiffs and that he had not represented them for several months. *Id.* at 3. Instead, Attorney Ollinger claimed that he represented "the Estate," which is not a party to these proceedings. *Id.* Plaintiff also indicated that they no longer wished for Attorney Ollinger to represent them. *Id.* Therefore, the undersigned treated Attorney Ollinger's representations as an oral motion to withdraw as counsel, which was granted. *Id.* Since that time, Plaintiffs have been proceeding *pro se*. *See id.*

Plaintiffs and Defendant participated in mediation on February 11, 2020.  Doc. No. 65.  The parties reached a settlement at mediation.  *Id.*

On February 25, 2020, Defendant filed a Motion for Court to Retain Jurisdiction to Enforce Settlement and to Address the Pending Charging Lien and Retaining Lien.  Doc. No. 66.  The motion was referred to the undersigned.   In the motion, Defendant states that the parties are unable to complete their settlement due to Attorney Ollinger's pending liens.  *Id.* at 3; *see* Doc. Nos. 30, 31.  Defendant further asserts its position that Attorney Ollinger's liens are unenforceable.  *Id.* 2–3.

On March 2, 2020, Attorney Ollinger filed a response to Defendant's motion, which is in itself a motion titled, "Motion of Ollinger as Lienor to See Settlement Agreement, Release, Mediation, Agreement and Motion for Attorney Fees."  Doc. No. 67.  Attorney Ollinger states that he performed several legal services on behalf of Plaintiffs prior to his discharge from this case.  *Id.* at 2.  He asks that, pursuant to the liens, he be allowed to see the settlement agreement between Plaintiffs and Defendant.  *Id.* at 2–3.  He states that he "needs to see the Settlement Agreement because it is relevant to see if [his] liens are worth pursuing and how much his services contributed to the settlement."  *Id.* at 3.  He further asks, "If the settlement amount was for nuisance value and a small number, why should [he] bother going forward with the claim on the liens?"  *Id.*[1]

The undersigned thereafter entered an Order requiring all interested parties to file a response to Attorney Ollinger's motion.  Doc. No. 68.  Defendant filed a response, and so did Plaintiffs.

---

[1] On March 26, 2020, Attorney Ollinger also filed a "Motion to Set Aside Settlement Agreement for Unauthorized Practice of Law."  Doc. No.  72.  In the motion, Attorney Ollinger purported to challenge the individual Plaintiffs' ability to enter into a settlement agreement with Defendant, and argued that Plaintiff Consuela Renae Hooks was engaging in the unauthorized practice of law.  *Id.*  I denied that motion for three primary reasons: (1) Attorney Ollinger is not counsel of record in the case or a party to the proceedings; (2) Attorney Ollinger is not a party to the private settlement agreement between Plaintiffs and Defendant; and (3) in any event, the motion failed to comply with the Local Rules.  Doc. No. 73.

Doc. Nos. 69, 70, 76. Plaintiffs did not agree to allow Attorney Ollinger to view a copy of the private settlement agreement between Plaintiffs and Defendant. Doc. No. 76.

On review of the parties' filings, as well as Attorney Ollinger's Notice of Charging Lien and Notice of Retaining Lien, I determined that before resolving whether Attorney Ollinger is entitled to see the settlement agreement between Plaintiffs and Defendant, Attorney Ollinger must first establish that his liens are enforceable in these proceedings. I determined that Attorney Ollinger's "Motion to See Settlement Agreement, Release, Mediation Agreement and Motion for Attorney Fees" (Doc. No. 67) was insufficient by itself to establish the enforceability of the liens in this Court. Therefore, I ordered Attorney Ollinger to file a memorandum of legal authority specifically addressing the following:

1. **Jurisdiction**. Attorney Ollinger must address, <u>with citation to federal legal authority</u>, this Court's jurisdiction to resolve the dispute over the enforceability of the charging lien and retaining lien in these proceedings.

2. **Validity of Retaining Lien**. Attorney Ollinger must establish, <u>with citation to evidence and legal authority</u>, that he has a valid retaining lien. Attorney Ollinger must also establish, <u>by submission of evidence</u>, that he has possession of Plaintiffs' property upon which he seeks to enforce the retaining lien. *See In re Beverly Mfg. Corp.*, 841 F.2d 365, 368 (11th Cir. 1988) ("Under Florida law . . . an attorney must have possession of his client's property in order to establish a retaining lien.").

3. **Validity of Charging Lien**. Attorney Ollinger must establish, <u>with citation to evidence and legal authority</u>, that he has a valid charging lien. In particular, Attorney Ollinger must establish, <u>by submission of evidence</u>, that he meets the four requisite elements: "first, a valid contract, express or implied, between the attorney and client; second, an

understanding between the parties that payment is dependent upon recovery or that payment will come from the recovery; third, the client's attempt to avoid payment of the fees or a dispute as to the amount involved; and fourth, timely notice of the lien." *Aldar Tobacco Grp., LLC v. Am. Cigarette Co.*, 577 F.2 App'x 903, 906 (11th Cir. 2014) (citing *Sinclair, Louis, Siegel, Heath, Nussbaum, & Zavertnik, P.A. v. Baucom, et al*, 428 So. 2d 1383, 1384 (Fla. 1983)). Attorney Ollinger must further address his legal right to recover under a contingency fee arrangement when he was terminated as counsel of record prior to the parties reaching a settlement in this case. *See, e.g.*, *Aldar Tobacco Grp., LLC v. Am. Cigarette Co.*, 577 F. App'x 903, 907 (11th Cir. 2014) ("In Florida, case law governs an attorney's right to recover fees under a contingency agreement when an attorney withdraws."). Attorney Ollinger must also establish, <u>by submission of evidence and citation to legal authority</u>, that his services produced "a positive judgment or settlement for the client, since the lien will attach only to the tangible fruits of the services." *Bruton v. Carnival Corp.*, 916 F. Supp. 2d 1262, 1268–69 (S.D. Fla. 2012) (quoting *Mitchell v. Coleman*, 868 So. 2d 639, 641 (Fla. 2d Dist. Ct. App. 2004)). In particular, Mr. Ollinger must address how his services resulted in the settlement given that, by his own admission, he has not been Plaintiffs' attorney since November 2018.

4. **Authority to Review Private, Confidential Settlement Agreement**. Attorney Ollinger must, <u>with citation to legal authority</u>, support his contention that although he is not attorney of record nor a party to these proceedings, he is entitled to review the confidential settlement agreement between Plaintiffs and Defendant.

Doc. No. 79, at 2-4.  I subsequently provided Attorney Ollinger until May 29, 2020 to file his memorandum of legal authority, and directed Defendant and Plaintiffs to file their respective responses on or before June 12, 2020.   Doc. No. 83.

On May 22, 2020, Attorney Ollinger filed a timely memorandum of legal authority in support of his position, with 122 pages of exhibits in support.  Doc. Nos. 87; 87-1; 87-2.  Those exhibits include:

- A contingency fee agreement between Attorney Ollinger and Plaintiffs, executed March 31, 2018, and related documents (Doc. No. 87-1, at 1–9 ("Exhibit 1"));

- A contingency fee agreement between Attorney Ollinger and Plaintiffs specifically related to an "accidental death claim against Affinity Credit Union; Minnesota Life Insurance; and Group Insurance Trust for Financial Institutions, which is being administered by Affinion benefits Group" and related documents (Doc. No. 87-1, at 10–22) ("Exhibit 2");

- Plaintiffs' response to Attorney Ollinger's motion to see the settlement agreement, stating that Plaintiffs dispute the validity of the liens (Doc. No. 87-1, at 23–24) ("Exhibit 3");

- Attorney Ollinger's Notices of Liens (Doc. No. 87-1, at 25–29 ("Exhibit 4");

- Documents identified by Attorney Ollinger as "Geico – Retaining Lien Holdings," which includes: (1) a "Policy Release," in which the Estate of Claudia Rameshwar and Nandalall Rameshwar discharge Geico from liability in exchange for $10,000.00; and (2) an advisory ethics opinion issued to Attorney Ollinger from The Florida Bar regarding whether settlement proceeds could be used by Attorney Ollinger to reimburse himself for costs incurred (Doc. No. 87-1, at 30–34) ("Exhibit 5");

- A copy of the initial complaint filed in state court on August 1, 2018 (Doc. No. 87-1, at 35–46) ("Exhibit 6");

- Another copy of the initial complaint filed in state court on August 1, 2018, which Attorney Ollinger labels "Federal Complaint" (Doc. No. 87-1, at 47–58) ("Exhibit 7");

- Copies of the state court and federal court dockets (Doc. No. 87-1, at 59–63; Doc. No. 87-2, at 2–4) ("Exhibit 8");

- An invoice from Jackson Lee, P.A. issued to Attorney Ollinger for "Contract Research . . . Estate of Claudia Rameshwar" (Doc. No. 87-2, at 5) ("Exhibit 9");

- Correspondence between Attorney Ollinger, Defendant, and "Affinion Benefits Group," including: (1) an April 27, 2018 letter stating that Attorney Ollinger represented Plaintiffs and the Estate (Doc. No. 87-2, at 6); (2) May 22, 2018 communication regarding information requested by Defendant (*id.* at 7); (3) a May 23, 2018 civil remedy notice (*id.* at 8); (4) a June 18, 2018 letter regarding the settlement with Geico (*id.* at 9); (5) a June 20, 2018 one-sentence letter that "delay in payment of benefits . . . is more evidence of bad faith" (*id.* at 10); (6) a July 19, 2018 letter from Defendant to Attorney Ollinger regarding denial of claim (*id.* at 11–13); (7) a July 26, 2018 letter from Attorney Ollinger to Affinion stating that absent full payment received, a bad faith lawsuit would be filed (*id.* at 14); (8) an August 14, 2018 letter from Attorney Ollinger to Defendant asking for reconsideration of the denial of benefits (*id.* at 15); (9) an August 30, 2018 letter from Defendant denying reconsideration (*id.* at 16–17) (collectively, "Exhibit 10");

- A screenshot of an inbox of an email account, which Attorney Ollinger labels "Email Correspondence" (Doc. No. 87-2, at 18–32) ("Exhibit 11");

- Timesheet of attorney hours for work performed related to Geico (Doc. No. 87-2, at 33 ("Exhibit 12");

- Timesheet of attorney hours for work performed related to Minnesota Life Insurance (Doc. No. 87-2, at 34–38) ("Exhibit 13");

- A "mass mailing" letter from Attorney Ollinger to potential witnesses concerning "Sunrise Mobile Home Park," and whether such witnesses were treated unfairly by such (Doc. No. 87-2, at 39) ("Exhibit 14");

- A "press release" by Attorney Ollinger regarding a "Rent-to-Own-Scam" that allegedly caused the wrongful death of Claudia Rameshwar (Doc. No. 87-2, at 40) ("Exhibit 15");

- A series of documents that Attorney Ollinger labels, "Conflict of Interest" (Doc. No. 87-2, at 41–57) ("Exhibit 16");

- The mediation disposition report stating that Plaintiffs and Defendant settled the case on February 11, 2020 (Doc. No. 87-2, at 58–59) ("Exhibit 17").

On June 11, 2020, Defendant filed a timely response to Attorney Ollinger's memorandum, as permitted by the Court. Doc. No. 88. However, Plaintiffs did not file their response until June 19, 2020, one week after the deadline to do so. Doc. No. 92. Plaintiffs did not seek leave to late-file their response, although I note that the response is dated June 11, 2020. *Id.* Moreover, the response appears to be a recitation of the same arguments raised in Defendant's response. (*Compare* Doc. No. 88, *with* Doc. No. 92). I further note that neither Defendant nor Attorney Ollinger have challenged the timeliness of Plaintiff's response or requested leave to file a reply. Accordingly, I do not believe that any party, or Attorney Ollinger, will be prejudiced if I consider Plaintiffs' untimely response. I will therefore refrain from striking the response, but I remind Plaintiffs that they are at all times to abide by Court-ordered deadlines, the Local Rules of this Court, and the Federal Rules of Civil Procedure.

The matter now being fully briefed, it is ripe for review.[2]

## II.    ANALYSIS.

According to Defendant, Plaintiffs and Defendant are unable to complete their settlement, including payment of settlement proceeds, prior to the Court resolving the validity of Attorney Ollinger's pending retaining lien and charging lien. Doc. No. 66, at 3. Thus, to resolve the instant motion, as the above discussion reveals, the Court must first determine whether it has jurisdiction to consider Attorney Ollinger's claims regarding the validity of the liens, and, if the Court determines that it does, the Court must also consider whether such liens are valid and enforceable in these proceedings. Each of these issues will be discussed, in turn.

---

[2] Neither the parties nor Attorney Ollinger requested a hearing on these issues. Upon review, the undersigned determined that a hearing was unnecessary to resolve Defendant's motion and the issue of whether Attorney Ollinger's liens are enforceable in these proceedings.

A.     Jurisdiction.

In ordering further briefing in this matter, the undersigned directed Attorney Ollinger to address, with citation to *federal legal authority*, this Court's jurisdiction to resolve the dispute over the enforceability of the charging lien and retaining lien in these proceedings.  Doc. No. 79, at 2. In his memorandum of legal authority, Attorney Ollinger has failed to do so.  *See* Doc. No. 87.  He instead cites to a few Florida state court cases and argues that the "liens should be enforced in the original proceeding it arose." *Id.* at 9–11.  Defendant and Plaintiffs, for their part, "do not contest that this Court has jurisdiction to determine the validity of [the] Charging Lien and Retaining Lien." Doc. No. 88, at 2; Doc. No. 92, at 2.

Despite Attorney Ollinger's failure to establish the Court's jurisdiction regarding his claim for attorney's fees, the undersigned recognizes that "there is a long tradition of sustaining jurisdiction to determine fees due an attorney dismissed by a client in a pending action." *Cherry Grp., LLC v. D.B. Zwirn Special Opportunities Fund, L.P.*, No. 3:08-cv-222-J-34PDB, 2014 WL 12691591, at *6 (M.D. Fla. July 16, 2014) (quoting *Broughten v. Voss*, 634 F.2d 880, 882 (5th Cir. 1981)).[3]  "Supplemental jurisdiction under 28 U.S.C. § 1367 has routinely been extended to fee disputes arising during the course of the principal proceedings." *Everett v. City of St. Petersburg*, No. 8:14-cv-2508-T-36AEP, 2015 WL 2168786, at *1 (M.D. Fla. May 7, 2015).  *See also Levitt v. Brooks*, 669 F.3d 100, 103 (2d Cir. 2012) ("It is well settled that a federal court may, in its discretion, exercise ancillary jurisdiction to hear fee disputes between litigants . . . and their attorneys when the dispute relates to the main action."); *Rivera–Domenech v. Calvesbert Law Offices PSC*, 402 F.3d 246, 250 (1st Cir. 2005) ("Courts have rested the exercise of jurisdiction over [attorney-client] fee

---

[3] In *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

- 10 -

disputes related to proceedings before them on the doctrine of ancillary jurisdiction."); *Garrick v. Weaver*, 888 F.2d 687, 690 (10th Cir. 1989) (citation omitted) (emphasis in original) ("[D]etermining the legal fees a party to a lawsuit properly before the court owes its attorney, *with respect to the work done in the suit being litigated*, easily fits the concept of ancillary jurisdiction.").

Here, Attorney Ollinger seeks, pursuant to the retaining lien and charging lien, to collect attorney's fees from the settlement agreement between Plaintiffs and Defendant, for work performed in this lawsuit before he was discharged from representation. *See* Doc. Nos. 67, 87. Federal courts will address the validity of a charging lien filed by a discharged attorney by exercising supplemental or ancillary jurisdiction over the matter. *Bruton v. Carnival Corp.*, 916 F. Supp. 2d 1262, 1265–66 (S.D. Fla. 2012) (collecting authority). Therefore, to the extent that Attorney Ollinger can establish that his liens are enforceable in these proceedings, the Court could exercise ancillary jurisdiction to resolve such claims. *See, e.g.*, *Travelers Prop. Cas. Co. of Am. v. Paramount Lake Eola, L.P.*, No. 6:08-cv-805-Orl-28GJK, 2010 WL 2977981, at *7 (M.D. Fla. June 21, 2010) (finding court had ancillary jurisdiction in dispute as to whether former attorney's charging lien was enforceable), *report and recommendation adopted*, 2010 WL 2977978 (M.D. Fla. July 26, 2010). As discussed below, however, I find that Attorney Ollinger has failed to establish that his retaining lien and charging lien are enforceable in these proceedings.

B. <u>Charging Lien</u>.

Florida law governs the validity of a charging lien. *In re Beverly Mfg. Corp.*, 841 F.2d 365, 368 (11th Cir. 1988).[4] A charging lien "is an equitable right to have costs and fees due an attorney for services in the suit secured to him in the judgment or recovery in that particular suit." *Buckley*

---

[4] "No statutes outline the requirements for valid attorney's liens in Florida. Rather, case law acts as the sole guide for both attorneys and courts as to these liens." *Daniel Mones, P.A. v. Smith*, 486 So. 2d 559, 561 (Fla. 1986).

- 11 -

*Towers Condo., Inc. v. Katzman Garfinkel Rosenbaum, LLP*, 519 F. App'x 657, 660–61 (11th Cir. 2013) (quoting *Sinclair, Louis, Siegel, Heath, Nussbaum & Zavertnik, P.A. v. Baucom*, 428 So. 2d 1383, 1384 (Fla. 1983)).[5] "A charging lien requires four elements: first, a valid contract, express or implied, between the attorney and client; second, an understanding between the parties that payment is dependent upon recovery or that payment will come from the recovery; third, the client's attempt to avoid payment of the fees or a dispute as to the amount involved; and fourth, timely notice of the lien." *Aldar Tobacco Grp., LLC v. Am. Cigarette Co.*, 577 F. App'x 903, 906 (11th Cir. 2014) (citing *Sinclair*, 428 So. 2d at 1385).

If the attorney was terminated as counsel of record prior to the settlement of the case, the attorney must also establish his legal right to recover under the contingency fee arrangement. *See Id.* (citing *Faro v. Romani*, 641 So. 2d 69, 71 (Fla. 1994), for the proposition that "an attorney's voluntary withdrawal from representation before the occurrence of the contingency forfeits any and all claim to compensation"). "It is not enough to support the imposition of a charging lien that an attorney has provided his services; the services must, in addition, produce a positive judgment or settlement for the client, since the lien will attach only to the tangible fruits of the services." *Bruton*, 916 F. Supp. 2d at 1268–69 (quoting *Mitchell v. Coleman*, 868 So. 2d 639, 641 (Fla. 2d Dist. Ct. App. 2004)).

Here, although it appears that Attorney Ollinger may be able to establish the four preliminary elements necessary to perfect a charging lien,[6] I recommend that the Court find that he has failed

---

[5] Unpublished opinions of the Eleventh Circuit are cited as persuasive authority. *See* 11th Cir. R. 36–2.

[6] First, Attorney Ollinger has submitted a copy of two contingency fee contracts entered into by Plaintiffs and Attorney Ollinger, one of which specifically relates to Plaintiffs' claims against Defendant in this case. Doc. No. 87-1, at 1–22. Second, those contracts demonstrate that the agreement between Plaintiffs and Attorney Ollinger is that recovery of attorney's fees would occur on a contingent basis. *See id.* Third, Plaintiffs have denied that Attorney Ollinger is entitled to fees under the parties' agreements, and

to demonstrate that his services "produce[d] a positive judgment or settlement for the client," such that his charging lien should be enforced in the proceedings before this Court.

As discussed above, Attorney Ollinger seeks to enforce a charging lien against proceeds of the settlement between Plaintiffs and Defendant, which settlement resulted from mediation that occurred over a year after Attorney Ollinger states that Plaintiffs terminated his representation. "Florida law requires that an attorney's charging lien be based on the recovery *obtained by* the attorney." *Scutieri v. Estate of Revitz*, 829 F. Supp. 387, 392 (S.D. Fla. 1993); *see also Bruton*, 916 F. Supp. 2d at 1268–69 (to impose a charging lien, an attorney's services must "produce a positive judgment or settlement for the client, since the lien will attach only to the tangible fruits of the services"). Attorney Ollinger has not submitted evidence definitively establishing that he obtained the settlement for Plaintiffs from which he seeks to be paid, or that he unquestionably contributed to the settlement between Plaintiffs and Defendant through his services. To the contrary, by Attorney Ollinger's own admissions, Plaintiffs discharged him on November 13, 2018. *See* Doc. No. 67, at 2. Mediation did not occur until February 11, 2020, which resulted in the settlement between Plaintiffs and Defendant. Doc. No. 65. None of the documentation submitted by Attorney Ollinger conclusively demonstrates that his efforts as Plaintiffs' attorney in 2018 resulted in the settlement between Plaintiffs and Defendant in this case in 2020. *See* Doc. Nos. 87, 87-1, 87-2.[7] *Cf. In re Miami Beverly, LLC*, 608 B.R. 574, 582 (Bankr. S.D. Fla. 2019) (dissolving

---

therefore, appear to be attempting to avoid paying fees to Attorney Ollinger. Doc. No. 76. Fourth, Attorney Ollinger filed a Notice of Charging Lien on the docket prior to the parties reaching settlement in this case, and thus has provided timely notice of the lien to Plaintiffs. *See* Doc. No. 30; *Brown v. Vermont Mutual Ins. Co*., 614 So. 2d 574, 580 (Fla. 1st Dist. Ct. App. 1993) (in order to be "timely," notice of an attorney's charging lien must be filed "before the lawsuit has been reduced to judgment or dismissed pursuant to settlement").

[7] Attorney Ollinger makes conclusory assertions regarding the services allegedly rendered, but makes no effort to establish with citation to evidence and legal authority that such efforts resulted in the settlement between Plaintiffs and Defendant. Doc. No. 87, at 8–9, 18. I find Attorney Ollinger's "belief"

charging lien where attorney represented client for less than five months, attorney's only work in the case consisted of filing bankruptcy claim, and attorney was terminated from representation more that six months before settlement discussions began); *Rochlin v. Cunningham*, 739 So. 2d 1215, 1217 (Fla. 4th Dist. Ct. App. 1999) ("The fact that the final settlement agreement included some terms that were negotiated by appellant does not mean that she produced a positive judgment for Cunningham.  The record shows that no settlement was reached while appellant represented Cunningham mainly because of the advice concerning the child support.   Based on this record, we hold that the unresolved settlement agreement did not constitute a positive result . . . .").[8]

Accordingly, I respectfully recommend that the Court find that Attorney Ollinger has failed to establish that his charging lien is enforceable in these proceedings, and that the issue of Attorney Ollinger's entitlement to attorney's fees is "more appropriately pursued in a separate action to enforce the terms of the contract between [Attorney] Ollinger and [Plaintiffs]."  *See Noblet, et. al v. Ditchwitch Trencher of Fla., Inc., et al.*, No. 6:01-cv-845-Orl-KRS, Doc. No. 56 (M.D. Fla. Oct. 10, 2002) (denying without prejudice Attorney Ollinger's request to enforce charging lien in federal

---

that the settlement would not have occurred but for his "filing claim, establishment of liability, and litigation proceedings," without more, woefully insufficient.  *See id.* at 18.

[8] I note that several of Attorney Ollinger's representations and submissions do not appear to relate to this case.   For instance, Attorney Ollinger references a case filed in probate court, and the efforts he made in those proceedings.  *See, e.g.*, Doc. No. 87 ¶¶ 21–22, 24.   He also cites certain "eviction claims" that he states "got . . . dismissed."  *Id.* ¶ 14.  As another example, there are communications regarding a separate settlement with Geico as it relates to the Estate of Claudia Rameshwar.   Doc. No. 87 ¶ 15; 87-1, at 29–33; 87-2, at 33, 94.   There is also documentation related to "*Estate of Claudia Rameshwar, Deceased v. Sunrise Mobile Home Park and Tammy Cloud*, Case No. 05-2018-CA-014195," an alleged "Rent-to-Own Scam" by Sunrise Mobile Home Park.  *See, e.g.*, Doc. No. 87-2, at 39, 40.   Attorney Ollinger also alleges there was a mass mailing to the residents of "Sunrise Village."  Doc. No. 87 ¶ 12.  Insofar as this evidence does not relate to this case, it would be improper for the Court to adjudicate the claim for attorney's fees as it relates to these issues.  *See Myers v. Cent. Fla. Investments, Inc.*, No. 6:04-cv-1542-Orl--28DAB, 2010 WL 2541792, at *3 (M.D. Fla. May 26, 2010); *Jaye v. Royal Saxon, Inc.*, 687 So. 2d 978, 981 (Fla. 4th Dist. Ct. App. 1997) (fees and costs incurred outside a suit are not, absent special circumstances, covered by a charging lien).

court because he had not established that he obtained the settlement from which he sought to be paid (citing *Scutieri*, 829 F. Supp. at 392)); *see also Pharmacy Value Mgmt. Sols., Inc. v. Hartman*, No. 8:17-cv-132-EAK-CPT, 2019 WL 5653774, at *4 (M.D. Fla. Oct. 31, 2019) (declining supplemental jurisdiction over claim of charging lien, stating that "[t]he parties' rights and obligations with respect to their current fee dispute can be adequately protected and determined in a separate state court proceeding").  Therefore, I recommend that the Court grant Defendant's motion to the extent that it seeks a finding that Attorney Ollinger's charging lien is not enforceable in these proceedings.

C. <u>Retaining Lien</u>.

Florida law also governs attorney retaining liens.  *In re Beverly Mfg. Corp.*, 841 F.2d at 368. "[A]n attorney has a right to a retaining lien upon all of the client's property in the attorney's possession, including money collected for the client.  Unlike a charging lien, a retaining lien covers the balance due for all legal work done on behalf of the client regardless of whether the property is related to the matter for which the money is owed to the attorney."  *Id.* (citing *Daniel Mones, P.A. v. Smith*, 486 So. 2d 559, 561 (Fla. 1986)).

"The retaining lien is a tool available for attorneys to secure payment of fees by attaching a lien to 'papers, money, securities and other property coming into his possession in the course of his professional employment.'"  *In re Alessi Family Ltd. P'ship*, 261 F. Supp. 3d 1268, 1272 (S.D. Fla. 2017) (citing *Wintter v. Fabber*, 618 So. 2d 375, 376 (Fla. 4th Dist. Ct. App. 1993)).  "A retaining lien is a passive one; it cannot be enforced through foreclosure and rests wholly upon the right to retain possession until the bill is paid."  *Andrew Hall & Assocs. v. Ghanem*, 679 So. 2d 60, 62 (Fla. 4th Dist. Ct. App. 1996); *see also Daniel Mones*, *P.A. v. Smith,* 486 So.2d 559, 561, (Fla. 1986) ("A retaining lien is "purely a possessor lien giving the attorney the right to retain possession of his

client's books, documents, money or any other property which comes into the attorney's hands during the course of this employment until the balance due the attorney's services is paid.").

In his memorandum, Attorney Ollinger has not sufficiently established the validity of his retaining lien. Instead, Attorney Ollinger cites generally to Florida law on retaining liens but fails to explain how those principles apply to the facts of this case. *Id.* at 11–13. Because Attorney Ollinger's representations in his memorandum are insufficient to establish that his retaining lien is valid under governing law, I recommend that any request to enforce the retaining lien in these proceedings be denied on this basis. *See* Doc. No. 79, at 3 (requiring Attorney Ollinger to establish, with citation to evidence and legal authority, that he has a valid retaining lien).

Attorney Ollinger also appears to argue that he is in possession of $15,000.00 of funds from a settlement with Geico, and that Plaintiffs and Attorney Olinger dispute who owns these funds. Doc. No. 87, at 9, 11–12. Attorney Ollinger states that these funds are "in his trust account" due to "the Geico Insurance payout," and that he has already filed a separate lawsuit in state court "for an order or judgment to determine what should be done with this money." Doc. No. 87, at 9.

Attorney Ollinger's position as it relates to the $15,000.00 in settlement proceeds from Geico, and how it relates to the retaining lien, is confusing at best. It is entirely unclear from Attorney Ollinger's memorandum what relief he seeks from this Court as it relates to the $15,000.00 and the retaining lien he seeks to enforce. *Cf. Cooper v. McNair*, 49 F.2d 778, 781 (S.D. Fla. 1931) ("[A] retaining lien . . . like other mere possessory liens, is purely passive, being a bare right to hold possession until payment. It cannot be actively enforced."). To the extent that Attorney Ollinger is asserting that he has a valid retaining lien on the $15,000.00, subject to Plaintiffs' payment of attorney's fees in this proceeding, as discussed above, Attorney Ollinger has not yet established that he is entitled to attorney's fees (through quantum meruit or otherwise) from Plaintiffs for his

representation in these proceedings. *See generally Daniel Mones, P.A. v. Smith*, 486 So. 2d 559, 561 (Fla. 1986) (stating that retaining lien "covers the balance due for all legal work done on behalf of the client . . . .").[9]

Insofar as Attorney Ollinger is arguing that he is personally entitled to $10,000.00 of the settlement proceeds from the Geico matter, Attorney Ollinger has not established, with citation to legal authority as my prior Order required, that he is entitled to such relief from this Court. *See* Doc. No. 87, at 11–13. I note that Attorney Ollinger states that he has already filed a separate lawsuit in state court regarding "what should be done" with the $15,000.00 from the Geico matter, and thus, at minimum, I recommend that the Court decline to exercise ancillary jurisdiction to resolve that issue here. *See* 28 U.S.C. § 1367(c). Finally, inasmuch as Attorney Ollinger seeks to assert that his retaining lien is valid as to the settlement proceeds from this case, Plaintiffs and Defendant both correctly point out that the settlement proceeds are not in Attorney Ollinger's possession. *See In re Beverly Mfg. Corp.*, 841 F.2d at 368 (emphasis added) "[A]n attorney has a right to a retaining lien upon all of the client's property *in the attorney's possession*, . . . .").

In sum, I respectfully recommend that the Court grant Defendant's motion to the extent that it asks the Court to find that Attorney Ollinger has not established that his retaining lien is enforceable in these proceedings.

D.      <u>Entitlement to View Terms of Private Settlement Agreement</u>.

In ordering further briefing from Attorney Ollinger, the undersigned required Attorney Ollinger to provide citation to legal authority supporting his contention that although he is not

---

[9] To be clear, Attorney Ollinger has sufficiently shown the existence of a contingency fee agreement between himself and Plaintiffs for his work on this case. What Attorney Ollinger has not shown, however, is that there are any fees outstanding under the agreement and/or that he would be entitled to recover those fees (at least in this Court).

- 17 -

attorney of record nor a party to these proceedings, he is entitled to review the confidential settlement agreement between Plaintiffs and Defendant. Doc. No. 79, at 4.

In his responsive memorandum, Attorney Ollinger cites two legal bases to purportedly support his position that he is entitled to review the private, confidential settlement agreement between Plaintiffs and Defendant. First, Attorney Ollinger cites 11 U.S.C. § 542(e). Doc. No. 87, at 18. However, that provision does not apply in this case, as it applies to bankruptcy proceedings. Second, Attorney Ollinger cites two cases out of the Southern District of New York for the proposition that "confidentiality of the settlement cannot serve to shield that statement from discovery." *Id.* at 18–19 (*citing Tribune Co. v. Purcigliotti*, No. 93 Civ. 7222(LAP) (THK), 1996 WL 337277, *3 (S.D.N.Y. June 19, 1996); *Magnaleasing, Inc. v. Staten Island Mall*, 76 F.R.D. 559, 562 (S.D.N.Y. 1977)). Attorney Ollinger's position is unpersuasive. First, those cases are not binding on this Court. Second, Attorney Ollinger has not cited any authority permitting him to conduct discovery in this case; he does not ask for discovery in this case; and discovery in this matter is closed. *See id.*; *see also* Doc. No. 36. Therefore, Attorney Ollinger has not established that he is legally entitled to view the terms of the settlement agreement, and his request to do so should be denied.

E.  Disbursement of Settlement Proceeds.

Defendant asks that the Court address the validity of the pending liens, as well as "provide Defendant with direction as to how to disburse the settlement proceeds." Doc. No. 66, at 3. Defendant points to Florida law holding that a person who pays proceeds of a settlement to a party with notice or knowledge that the party's attorney is claiming a charging lien, "may . . . be held liable, jointly and severally with the attorney's client, for the amount of the client's attorney's fees

and costs."  *See Brown v. Vermont Mut. Ins. Co.*, 614 So. 2d 574, 580–81 (Fla. 1st Dist. Ct. App. 1993).

Here, because I recommend that the Court find that Attorney Ollinger's charging lien and retaining lien are not enforceable in these proceedings, I further recommend that the Court find as moot Defendant's request for direction on how to disburse the settlement proceeds.  Instead, it is respectfully recommended that, upon a finding that Attorney Ollinger's liens are unenforceable in this case, the Court dismiss the case pursuant to Local Rule 3.08(b) based on the parties' settlement, "subject to the right of any party to move the Court within sixty (60) days thereafter . . . for the purpose of entering a stipulated form of final order or judgment; or, on good cause shown, to reopen the case for further proceedings."

### III. RECOMMENDATION.

For the reasons stated herein, it is **RESPECTFULLY RECOMMENDED** that the Court:

1. **GRANT in part and DENY in part** Defendant's Unopposed Motion for Court to Retain Jurisdiction to Enforce Settlement and to Address the Pending Charging Lien and Retaining Lien (Doc. No. 66);

2. **FIND** that Attorney Ollinger's retaining lien (Doc. No. 31) and charging lien (Doc. No. 30) are not enforceable in the proceedings before this Court;

3. **DENY** Attorney Ollinger's "Motion . . . As Lienor to See Settlement Agreement, Release, Mediation Agreement, and Motion for Attorney Fees" (Doc. No. 67), **without prejudice** to Attorney Ollinger raising his claims regarding attorney's fees in state court;

4. **DISMISS** this case pursuant to Local Rule 3.08(b); and

5. **DENY** Defendant's motion (Doc. No. 66) in all other respects.

**NOTICE TO PARTIES**

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on June 24, 2020.

LESLIE R. HOFFMAN
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Parties
George Ollinger, Esq.